**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| WALTER E. WAGNER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　Defendant. | No. 05-CV-2069-LRR<br><br>**ORDER** |

_____

*TABLE OF CONTENTS*

*I.     INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.    PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.   FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.    PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*V.     ALJ'S DETERMINATION OF DISABILITY* . . . . . . . . . . . . . . . . 6

*VI.    JUDICIAL REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

　　　*A.   Credibility of Opinion of Treating Physician* . . . . . . . . . . . . . . 8

　　　*B.   Duty to Recontact the Treating Physician* . . . . . . . . . . . . . . . . 10

　　　*C.   Credibility of Wagner's Subjective Allegations of Pain* . . . . . . . 11

　　　*D.   Residual Functional Capacity Determination* . . . . . . . . . . . . . . 12

　　　　　*1.   The ALJ's failure to include a total standing limitation per
　　　　　　　eight-hour workday* . . . . . . . . . . . . . . . . . . . . . . . . . . 12

　　　　　*2.   Wagner's ability to perform his job as Chief of Police* . . . . . 14

*VII.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

The matter before the court is Plaintiff's Complaint against the Commissioner of Social Security (docket no. 3).

## II. PRIOR PROCEEDINGS

On February 20, 2003, Plaintiff Walter Wagner ("Wagner"), applied for Title II Social Security benefits and Title XVI supplemental security income ("SSI") benefits alleging an inability to work since January 31, 2003, due to coronary artery disease, diabetes Type II, hypertension, impingement syndrome of the left shoulder, left knee pain from degenerative joint disease and obesity. On June 26, 2003, the Social Security Administration ("SSA") denied Wagner's application for Social Security and SSI benefits. On July 23, 2003, Wagner filed a request for reconsideration. On December 18, 2003, the SSA reconsidered Wagner's case, concluded its initial determination was correct and once again denied Wagner's claim.

On February 5, 2004, Wagner requested a hearing before an Administrative Law Judge ("ALJ"). On February 14, 2005, the ALJ, George Gaffaney, held a hearing ("Hearing"). In a June 7, 2005 opinion, the ALJ determined that Wagner was not disabled and was not entitled to SSI benefits. On June 20, 2005, Wagner requested a review of the ALJ's decision. On August 2, 2005, the SSA Appeals Council denied Wagner's request for review. Consequently, the ALJ's decision stands as the Commissioner's final decision.

On October 4, 2005, Wagner filed a Complaint in this court and sought judicial review of the Commissioner's decision. On December 15, 2005, the Commissioner filed an Answer. On February 15, 2006, Wagner filed a Brief. On April 13, 2006, the Commissioner filed a Brief.

## III. FACTUAL BACKGROUND

Wagner was born on October 28, 1954. (Tr. 52). Wagner graduated high school and attended college for two years, but did not obtain a degree. (Tr. 239). Wagner

worked as the Chief of Police in Ossian, Iowa, from 1977 until January 1, 2003. (Tr. 65). Wagner is 5'10" tall and weighs approximately 350 pounds. (Tr. 81).

In November of 2000, after suffering a knee injury, Wagner gained 40 pounds within a month. (Tr. 155-58). He was diagnosed with massive edema. (Tr. 155-58). At that same time, Wagner was diagnosed with nephrotic syndrome (due to diabetic nephropathy secondary to poorly controlled diabetes), hypertension, coronary artery disease, Type II diabetes and hyperlipidemia. (Tr. 156-57). That same month, Wagner underwent quadruple bypass surgery. (Tr. 157). After he was discharged from the hospital, Wagner returned to his job as Chief of Police. (Tr. 257). Throughout this time period, Wagner's family physician, Dr. Gregory N. Tjossem, monitored his health. (Tr. 187-92, 136-38).

In January of 2003, Dr. David Bakken, M.D., evaluated Wagner and diagnosed his shoulder pain as impingement syndrome (noting that it improved with the prescription drug, Toradol). (Tr. 119-21). Subsequently, Dr. Robert P. Frantz, a cardiologist, noted that Wagner's shoulder pain was non-cardiac. (Tr. 154). In January of 2003, Wagner visited Dr. Laurence J. Fuortes, M.D., Professor of Division of Occupational Medicine and Environmental Health at the University of Iowa Hospitals and Clinics, who stated that Wagner was ". . . unable to perform the full duties of a police officer . . . ." (Tr. 115).

On May 21, 2003, Iowa state agency physician, Dr. Richard Hornberger, a Medical Consultant for The Disability Determination Services Bureau, noted that Wagner could stand for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, lift up to twenty pounds occasionally and ten pounds frequently, and perform unlimited pushing and pulling. (Tr. 140). Dr. Hornberger also noted no consistency or credibility issues. (Tr. 147-48).

On October 8, 2003, the SSA requested that Dr. Tjossem perform an examination and evaluation on Wagner. Dr. Tjossem diagnosed Wagner with coronary artery disease,

3

status post coronary artery bypass grafts times four and Type II diabetes complicated by nephropathy, obesity and left knee pain from degenerative joint disease. (Tr. 171). Dr. Tjossem expressed the opinion that Wagner should not lift over forty pounds more than a couple of times a day, should stand no more than thirty minutes before resting and completely avoid stooping, climbing, kneeling and crawling. He also stated that Wagner was currently unable to perform his duties as a police officer and was therefore limited to office or desk work. (Tr. 171-72).

On December 16, 2003, an Iowa state agency physician, Dr. Gary J. Cromer, a Medical Consultant for The Disability Determination Services Bureau, wrote that Wagner could stand at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, lift thirty-five pounds occasionally and twenty pounds frequently and perform unlimited pushing and pulling. (Tr. 195). Dr. Cromer also noted three inconsistencies in Wagner's subjective allegations of pain: (1) Wagner did not pursue ongoing evaluation/treatment for conditions he alleges are disabling; (2) Wagner takes no pain medications for conditions he alleges are disabling; and (3) Wagner's subjective report to the The Disability Determination Services Bureau is much more severe than the symptoms he reports to his treating physicians. (Tr. 147, 202). Dr. Cromer stated that these inconsistencies "eroded the credibility of [Wagner's] subjective allegations." (Tr. 202). Dr. Cromer noted that on January 23, 2003, Wagner did not seek any further treatment for his shoulder pain because his shoulder pain had "significantly improved." (Tr. 147). He further noted that in October of 2003, Wagner alleged chronic knee pain and left arm pain but did not take any pain medication. That same year, Wagner also reported that he could walk from one-half mile to one mile, stand for forty minutes and lift forty pounds. (Tr. 202). Dr. Cromer concluded that the opinion evidence was "symptom-based and not supported by objective findings." (Tr. 202). Therefore, Dr. Cromer's opinion differed from the treating source opinion. (Tr. 202).

4

On November 5, 2004, Dr. Tjossem wrote that Wagner was completely disabled and could not work eight-hour days and forty-hour weeks. (Tr. 216). In January of 2005, Wagner's lawyers sent Dr. Tjossem a list of questions. (Tr. 208). On February 5, 2005, Dr. Tjossem wrote in his response that Wagner suffered from coronary artery disease, poorly controlled diabetes, arthritis, impingement syndrome of the left shoulder and morbid obesity. (Tr. 208). Dr. Tjossem also wrote that Wagner could not return to his previous occupation or perform a job with physical requirements. (Tr. 208-15). Dr. Tjossem imposed this limitation mainly because Wagner could only stand and walk for two hours out of an eight-hour day, could not climb, squat or kneel and could not lift anything over forty pounds. (Tr. 208-15).

At the Hearing, vocational expert, Carmen Mitchell, testified that Wagner could perform his past relevant work as Chief of Police, as generally performed in the national economy, but not as Wagner performed the job in the small town of Ossian, Iowa. (Tr. 263).

## IV. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 1383(c)(3) provides that the Commissioner's final determination after a hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). "The court shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.*

In order for the court to affirm the ALJ's findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole. *See Lochner v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992); *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted); *Cruse*, 867 F.2d at 1184; *Hall v. Bowen*, 830 F.2d 906, 911 (8th Cir. 1987). Substantial evidence requires "'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Cruse*, 867 F.2d at 1184 (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. *Gunnels v. Bowen*, 867 F.2d 1121, 1124 (8th Cir. 1989); *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). While inaccuracies and unresolved conflicts of evidence can serve as a basis for remand, "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case . . . ." *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).

## V. ALJ'S DETERMINATION OF DISABILITY

Determining whether a claimant is disabled is evaluated by a five-step process. *See* 20 C.F.R. § 404.1520(a)-(f); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The five steps are:

(1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.
(2) If the claimant is not engaged in substantial gainful activity, [his] medical condition is evaluated to determine whether [his] impairment, or combination of impairments, is medically severe. If the impairment is not severe, benefits are denied.
(3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.

6

(4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work [he] performed in the past. If the claimant is able to perform [his] previous work, [he] is not disabled.

(5) If the claimant cannot do [his] previous work, the Secretary must determine whether [he] is able to perform other work in the national economy given [his] age, education, and work experience.

*Trenary v. Bowen*, 898 F.2d 1361, 1364 n.3 (8th Cir. 1990) (citing *Bowen v. Yuckert*, 482 U.S. at 140-42); 20 C.F.R. § 404.1520(a)-(f).

"To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work." *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir. 1995) (citing *Reed v. Sullivan*, 988 F.3d 812, 815 (8th Cir. 1993)). If the claimant meets the burden, the burden of proof then shifts to the Commissioner, who must demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *Id.*

Under the first step of the analysis, the ALJ determined that Wagner had not engaged in substantial gainful activity at any time pertinent to this decision. At the second step, the ALJ determined that Wagner had the following impairments: coronary artery disease, impingement syndrome of the left shoulder and Type II diabetes. At the third step, the ALJ determined that Wagner's impairments were not equivalent to one of the listed impairments. At the fourth step, the ALJ determined that Wagner was able to perform his past relevant work.[1] Therefore, the ALJ denied benefits. The ALJ defined

---

[1] "Even [if Wagner] cannot perform the actual demands of his particular past relevant work, if the ALJ finds he can carry out his job as performed generally within the national economy, he is not disabled under the regulations." *Evans v. Shalala*, 21 F.3d

Wagner's RFC as:

> . . . lifting 20 pounds occasionally and 10 pounds frequently; sitting up to 90 minutes at a time for a total of 6 hours in an 8-hour workday; standing 30 minutes at a time; occasionally stooping, balancing, kneeling, crouching, crawling and climbing stairs but never climbing ladders; occasionally reaching overhead with the left extremity and in all directions; working in environments with frequent exposure to heat, humidity, dust and fumes. Additionally the claimant would require consideration for limited but fairly good vision in the right eye.

(Tr. 19, 21).

Wagner disputes the ALJ's credibility determinations, on Wagner's subjective allegations of pain and on the opinion of the treating physician, that the ALJ used to make his RFC determination. Wagner also disputes the ALJ's RFC determination regarding whether he can perform his former job and whether his former job was sedentary.

## VI. JUDICIAL REVIEW

### A. *Credibility of Opinion of Treating Physician*

The ALJ did not give the treating physician's opinion controlling weight.

> A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted).

The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by

---

832, 834 (8th Cir. 1994).

superior medical evidence, or if the treating physician has offered inconsistent opinions." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

Wagner contends that the ALJ improperly disregarded Dr. Tjossem's November 5, 2004 opinion. In his November 5, 2004 opinion, Dr. Tjossem said that Wagner was completely disabled and unable to work full-time. (Tr. 216). This opinion is inconsistent with Dr. Tjossem's February 5, 2005 opinion and October 8, 2003 opinion. In his February 5, 2005 opinion, Dr. Tjossem stated that Wagner could lift up to forty pounds, stand or walk for two hours out of an eight-hour day and occasionally stoop, kneel, crouch and crawl. (Tr. 209-215). Dr. Tjossem's October 8, 2003 opinion stated that Wagner could lift up to forty pounds and that Wagner could stand for thirty minutes at a time. (Tr. 171). He also stated that Wagner should not climb, squat or kneel and recommended that Wagner alternate between sitting and standing periodically. (Tr. 171). In his opinion, Dr. Tjossem noted that Wagner could not perform law enforcement duties and said, "[a]t his current medical condition he is limited to office/desk work." (Tr. 172). Dr. Tjossem did not note any changes in Wagner's care or condition between October 8, 2003, and February 5, 2005. Therefore, expressing the opinion that Wagner can lift up to forty pounds and stand for two hours out of an eight-hour day (for thirty minutes at a time) is inconsistent with stating that Wagner is completely unable to work full time. The ALJ properly disregarded Dr. Tjossem's November 5, 2004 opinion because the opinion was inconsistent with Dr. Tjossem's other opinions.

The ALJ gave Dr. Tjossem's other opinions significant weight, but not controlling weight. In *Guilliams v. Barnhart*, the Eighth Circuit Court of Appeals noted that inconsistent physician opinions "are entitled to less deference than they would receive in the absence of inconsistencies." 393 F.3d 798, 803 (8th Cir. 2005); *see also Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (stating that "where the treating physician's opinions are themselves inconsistent, they should be accorded less deference.") (citation

9

omitted).

The ALJ also considered the state agency physicians' opinions. Wagner contends that the ALJ erred in giving the state agency physicians' opinions more weight than Dr. Tjossem's opinions. The Eighth Circuit Court of Appeals noted two exceptions to the rule that consultative physicians' opinions do not constitute substantial evidence: (1) when "other medical assessments are supported by better or more thorough medical evidence" (2) when a treating physician offers inconsistent opinions. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (internal quotations and citations omitted). This case falls within the second exception. The ALJ properly weighed and considered Dr. Tjossem's opinions and the state agency physicians' opinions.

### B. *Duty to Recontact the Treating Physician*

Wagner argues that the ALJ is obligated to call the treating physician before making a decision if the treating physician's opinions are cursory or require additional clarification. *See Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002). "The ALJ is required to recontact medical sources . . . only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). *See also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (noting that the ALJ may, "without seeking clarification," properly discount opinions that are "inconsistent with other substantial evidence"); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (stating that the "inadequacy of the evidence" rather than the "rejection of the treating physician's opinion . . . triggers the duty to recontact the physician") (internal marks and quotations omitted).

Wagner cites no authority stating that the ALJ is obligated to contact the treating physician for clarification if one of the treating physician's opinions is inconsistent with that physician's other opinions. Furthermore, Dr. Tjossem's opinions are not cursory or in need of additional clarification. Rather, Dr. Tjossem specifically delineates the

symptoms and conditions that form the basis of his opinions. Additionally, the record contains sufficient evidence upon which the ALJ could make an informed decision. Therefore, the ALJ was not obligated to recontact Dr. Tjossem.

### C. Credibility of Wagner's Subjective Allegations of Pain

Wagner argues that the ALJ improperly rejected Wagner's subjective complaints of pain. When evaluating the credibility of a claimant's subjective complaints, the ALJ may not disregard them "solely because the objective medical evidence does not fully support them." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The [ALJ] is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id*. In evaluating claimant's subjective impairment, the following factors are considered: "(1) the applicant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Id*. at 1322. Each *Polaski* consideration needs to be acknowledged, but not discussed at length, before "discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). Subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The ALJ did not find Wagner's testimony fully credible because Wagner was able to perform daily living activities with minimal limitation. (Tr. 19). Wagner was able to perform all of his self-care as well as several household chores, including laundry, washing dishes, changing sheets, taking out the trash, home repairs and vacuuming. (Tr. 83, 258). Wagner also stated that he spent time on the computer, watched television, visited friends at their homes and at cafes and read magazines and newspapers. (Tr. 85). If the claimant

11

is able "to carry on a normal life," his impediments are most likely not disabling. *Johnson v. Apfel*, 240 F.3d 1145, 1149 (8th Cir. 2001); *see also Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (daily activities such as "driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break . . . , watching television, and playing cards" are not consistent with disabling pain). The ALJ also considered the medical opinions on the record when determining Wagner's credibility. (Tr. 19). The evidence as a whole supports the ALJ's conclusion that Wagner's daily activities and the medical record are not consistent with Wagner's disability claims.

Significantly, the ALJ considered state agency physician Dr. Cromer's opinion, that Wagner's subjective allegations of pain were inconsistent and gave less weight to Dr. Tjossem's opinions due to the inconsistencies. These medical opinions encompass the last four *Polaski* factors. Specifically, Dr. Cromer noted that Wagner did not pursue ongoing treatment for his shoulder pain, did not take pain medications for all of his allegedly disabling conditions and reported more severe symptoms to The Disability Determination Services Bureau than to his treating physicians. Wagner takes acetaminophen and aspirin for his pain, Furosemide for the edema, Petropelol for his kidneys, Lisiniprol for blood pressure, Metformin for diabetes, Tricor (he does not know what it is for), Lipitor for cholesterol and Humulin N, a long-term insulin injection. He says the medications help and notes no serious side effects other than frequent urination from the Furosemide. Wagner also admits that he can lift up to fifty pounds without too much trouble and stand for thirty to forty-five minutes at a time. As such, the ALJ did not err in giving Wagner's subjective complaints less weight than the opinions of the consulting physicians.

### D. Residual Functional Capacity Determination

#### 1. *The ALJ's failure to include a total standing limitation per eight-hour workday*

In his opinion, ALJ did not specify how many total hours Wagner could stand

during an eight-hour workday. In his RFC determination the ALJ stated that Wagner has the capacity for "sitting up to 90 minutes at a time for a total of 6 hours in an 8-hour workday; standing 30 minutes at a time . . ." (Tr. 21). This would indicate that Wagner has no total standing limitations during an eight-hour workday. However, the evidence substantially supports the fact that Wagner can stand up to two hours in an eight-hour workday. Furthermore, there is no evidence to substantially support the fact that Wagner has a standing limitation of less than two hours in an eight-hour workday.

Each state agency physician who examined Wagner noted that he could stand for some period during an eight-hour workday. On May 21, 2003, Dr. Hornberger, noted that Wagner could stand for at least two hours in an eight-hour workday. (Tr. 140). On October 8, 2003, Wagner's treating physician, Dr. Tjossem,[2] wrote that Wagner should stand only thirty minutes at a time, but Dr. Tjossem did not impose a total standing limitation per eight-hour workday. (Tr. 171-72 ). On December 16, 2003, Dr. Cromer noted that Wagner could stand at least two hours in an eight-hour workday. (Tr. 195). On February 5, 2005, Dr. Tjossem imposed a two hour maximum standing limitation per eight-hour workday on Wagner. (Tr. 209).

Dr. Tjossem's November 5, 2004 opinion, is the only opinion in the record which suggests that Wagner is incapable of standing at least two hours in a full workday. However, the ALJ properly disregarded this opinion because it is inconsistent with Dr. Tjossem's other opinions. In sum, the substantial weight of the evidence supports the conclusion that Wagner can stand two hours in an eight-hour workday.

Although the ALJ did not include a total standing limitation in a full workday, the ALJ did state that Wagner could sit up to six hours each day. It is reasonable to assume

---

[2] The court notes that Wagner states in his Brief that Dr. Tjossem has the most frequent contact with him and is the most knowledgeable regarding his condition. (Pl.'s Br. 9).

13

that the remaining two hours of the workday, left unaccounted for, would be spent standing. *See Lyles v. Barnhart*, No. 04-7074, 2006 WL 1401623, at *4 (10th Cir. May 23, 2006) (concluding that when the "ALJ determined that [plaintiff] could stand or walk for six hours, with normal breaks; the remaining work time would be spent sitting" and noting that this schedule was consistent with the physician's physical RFC assessment of plaintiff, to which "the ALJ gave great weight because it was consistent with the medical evidence of record"). This inference is further supported by the fact that the ALJ knew of Wagner's standing limitations and included a two hour standing limitation (in an eight-hour workday) in his hypothetical question to the vocational expert. (Tr. 261-63). Therefore, the ALJ's failure to announce the number of hours that Wagner could stand within an eight-hour workday did not have any effect on his decision. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (stating that the court must "determine whether the ALJ would have reached the same decision . . . even if [the ALJ] had followed the proper procedure").

### 2. *Wagner's ability to perform his job as Chief of Police*

Wagner contends that because the ALJ did not include a total standing limitation in an eight-hour workday, the ALJ was limiting Wagner to sedentary work. Wagner's argument is two-fold: (1) he did not have "sedentary past relevant work" and (2) he does not have a "residual functional capacity that could perform [his] past relevant work of a police chief."

"Light work" includes work "that requires a good deal of walking or standing" *or* "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). However, sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are

>sedentary if walking and standing are required occasionally
> and other sedentary criteria are met.

*Id.* at § 404.1567(a).

The *Dictionary of Occupational Titles* defines the job of Chief of Police (as performed in the national economy) as sedentary. (Tr. 96). Wagner only needs to be capable of performing his job as it is generally performed in the national economy. *Evans v. Shalala*, 21 F.3d 832, 834 (8th Cir. 1994). The evidence also indicates that Wagner spent the majority of the day sitting down when he worked as Chief of Police in Ossian, Iowa. Wagner indicated on questionnaires that he only stood for one hour per day and walked for one and one-half hours each day while performing his duties as Chief of Police. (Tr. 88). On another questionnaire, Wagner indicated that he walked one and one-half hours each day and sat six and one-half hours each day. (Tr. 65). The substantial weight of the evidence supports the fact that Wagner can stand at least two hours in an eight-hour workday. Therefore, the substantial weight of the evidence supports the fact that Wagner can perform his job of Chief of Police as it is generally performed in the national economy because the relevant work does not require performance of work-related activities precluded by his RFC. Furthermore, the substantial weight of the evidence supports the fact that Wagner's coronary artery disease status-post quadruple bypass, hypertension and hyperlipidemia, diabetes Type II, degenerative joint disease of the left knee and impingement syndrome of the left shoulder do not prevent Wagner from performing his past relevant work as it is generally performed in the national economy.

## VII. CONCLUSION

(1) The final decision of the Commissioner of Social Security is **AFFIRMED**;

(2) Plaintiff's Complaint (docket no. 3) is **DISMISSED WITH PREJUDICE**; and

(3) The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED** this 1st day of August, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA